**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Hector H.A.,

Peititioner,

v.

Todd Blanche, *Acting Attorney General*, et. al.

Respondents.

No. 26-cv-2914 (KMM/ECW)

**ORDER**

---

On June 10, 2026, Petitioner Hector H.A. filed a Petition for a Writ of Habeas Corpus, challenging his continued detention in the custody of Immigration and Customs Enforcement (ICE) during immigration-court proceedings related to his removal from the United States. (Dkt. 1.) He has been in custody since December 26, 2025. Although he has been ordered removed, that Order is not final, and is currently on appeal.

Following briefing from the parties, on August 5, 2026, United States Magistrate Judge Elizabeth Cowan Wright issued a Report and Recommendation (R&R) recommending that Mr. H.A.'s Petition be granted in part. (Dkt. 11.) Specifically, Judge Wright concluded that the Due Process Clause requires that Mr. H.A. receive an individualized assessment of whether his continued detention is necessary and recommended that Respondents be ordered to provide him with such a hearing. Mr. H.A. and Respondents both objected (Dkt. 12, 13.)

Mr. H.A. argues that ordering Respondents to hold a custody hearing is an ineffective remedy because some Immigration Judges have declined to reach the merits in

such proceedings, asserting that they lack the authority to do so. Mr. H.A. also argues that his arrest was unlawful because the I-200 warrant was not served on him at the time of his arrest. He asks this Court to order his release outright. In contrast, Respondents argue that Judge Wright's due process analysis is incorrect for a variety of reasons.

The Court reviews de novo any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). District courts "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b); *see also* Fed. R. Civ. P. 72(b)(3).

The Court has carefully reviewed the R&R, the complete record, and the parties' objections de novo. The Court agrees with Judge Wright's thorough reasoning, and largely adopts the R&R and its recommendation. Neither party's objections require a different result.

***Respondents' Objections***

The Court turns first to the objections of the Respondents. In most respects, Respondents' objections simply disagree with Judge Wright's due process analysis. The Court has considered those arguments carefully in this case and others, and overrules them. *See, e.g.*, *Ovidio D. v. Blanche*, No. 26-cv-3374 (KMM/SGE), 2026 WL 2333992, at *3–7 (D. Minn. Aug. 12, 2026). Given Judge Wright's very thorough discussion of these important issues, the Court does not restate the relevant analysis here. But two aspects of Respondents' objections require further discussion.

First, the Court disagrees with Respondents' counsel's assertion that Judge Wright made arguments on behalf of the Petitioner that his counsel did not make herself, and with

counsel's rather bold claim that doing so "has become a more common practice in this District." (Dkt. 13, p. 4 n.1.) Instead, the Court finds that the due process argument which Judge Wright ultimately found persuasive was raised by Petitioner and addressed by Respondents in their briefing.

The Court observes that Judge Wright was required to seek additional information in this case from Respondents because of a lack of clarity in the record before her. (Dkt. 8.) Judge Wright specifically sought supplemental information from Respondents to better understand Respondents' assertion that Mr. H.A. was not "admitted or paroled" into the United States. (Dkt. 5, p.1; Dkt. 6, ¶ 9.) This claim was contradicted by the Petition and by Petitioner's Reply, both of which asserted that he had been paroled into the country when he was 17 years old. The documents that Respondents originally provided contributed to the lack of clarity in the record: they showed nothing about his encounter with immigration authorities at the border, but did include a document mailed to his sister's home in early 2023, suggesting that he had been released to her home at some point. Respondents did not submit any documents about the encounter at the border when first responding to the petition, simply asserting that he was not admitted or paroled. Clarifying the circumstances of his entry into the United States three years before his arrest was necessary to Judge Wright's analysis, so she asked for additional information.

In response, Respondents provided documents indicating that in fact Mr. H.A. *had* been encountered at the border and released on his own recognizance into the United States on an "OREC," which is short for Order of Recognizance. For the first time, the documents submitted demonstrated that his release had occurred pursuant to a specific statutory

scheme governing the treatment of unaccompanied minors. (R&R at 29 (citing Dkt. 9).)[1] While it is unknown whether he was placed on any conditions of supervision, he was given a court date for a removal hearing two years after his entry, a date that appears to have been continued at least once.

By seeking supplemental information and then correctly identifying the statutory scheme pursuant to which Mr. H.A. was initially released, Judge Wright did not raise a new argument on behalf of Petitioner. In fact, both the Petition and Petitioner's Reply asserted that Mr. H.A. arrived here at age 17 and was released or paroled into the United States, and he argued that his rearrest following that initial release without due process violated the Constitution. (Dkt. 1, ¶ 16; Dkt. 7 at 7–10.) Simply put, Petitioner made this argument, not Judge Wright.

The Court rejects Respondents' objections in another way as well. Respondents allege that Judge Wright concluded that "Petitioner's protections under the Trafficking Victims Protection Reauthorization Act (TVPRA) last indefinitely," and characterize her holding as requiring DHS to "forever treat former-Unaccompanied Minors (UACs) differently from other adult aliens." (Dkt. 13 at 3–4.) This misunderstands the analysis of

[1] In their briefs, the parties seemed to speak past one another, requiring Judge Wright to try to sort out the contradictions. Petitioner repeatedly described his initial arrest and release as a minor as being "paroled" into the country, a characterization Respondents resisted. Respondents initially stalwartly argued that Mr. H.A. had never been "admitted or paroled," but later submitted documents showing that he had been "released" into the county on an OREC. The Court assumes that each party was acting in good faith in their characterization of Mr. H.A.'s status, with petitioner assuming his release on an OREC constituted some type of parole and Respondents believing it is something meaningfully different.

the R&R because Judge Wright did not suggest that Mr. H.A.'s unaccompanied minor status required him to be treated differently from adults in perpetuity. In fact, Judge Wright held the opposite: former unaccompanied minors released into the United States on an OREC like Hector H.A. have a similar liberty interest to adults who are encountered by ICE and then released or paroled into the United States.

> As other district courts in the Eighth Circuit have found, the release of a minor pursuant to this statutory process creates a liberty interest analogous to release on conditional parole for the purpose of a due process analysis. *Ixquiactap-Ajpacaja v. Mullin*, No. 4:26-CV-3143, 2026 WL 1295702, at *1 (D. Neb. May 12, 2026) ("While the petitioner was not released 'on his own recognizance,' see § 279(b)(2)(B), the circumstances are analogous, and the petitioner was effectively subject to conditional parole."); *Francisco-Francisco v. Mullin*, No. 8:26- CV-279, 2026 WL 2042292, at *1 (D. Neb. July 15, 2026) (citing *Ixquiactap-Ajpacaja*); *see also Guaman-Pinto v. Archambeault*, No. 26-CV-1716-JES-BLM, 2026 WL 849302, at *2 (S.D. Cal. Mar. 27, 2026)("Aliens afforded release under the TVPRA have the same due process protections regarding re-detention as those granted parole or release as adults: at a minimum, they are entitled to notice and opportunity to be heard regarding the individualized changed circumstances justifying revocation in their case.").

R&R at 30-31. Indeed, other courts in this district and elsewhere have held that due process rights apply to revocation of adults encountered at the border and released pursuant to orders of recognizance. *See, e.g.*, *Osman J.M.A. v. Blanche*, No. 26-cv-2123 (DWF/DJF), 2026 WL 1005056 (D. Minn. Apr. 14, 2026); *Silva v. Warden, Lincoln Cnty. Det. Ctr.*, No. 8:26-cv-131, 2026 WL 926725 (D. Neb. Apr. 6, 2026); *Guaman-Pinto v. Archambeault*, No. 26-cv-1716-JES-BLM, 2026 WL 849302 (S.D. Cal. Mar. 27, 2026).

Finally, even were the Court to credit Respondents' position that a former unaccompanied minor could be taken back into custody at any time for any reason, the outcome here would be the same. The Court has held that persons who live in the United States have due process rights regardless of the legality of their entry, and those rights entitle them to an individualized custody assessment. *See Ovidio D.*, 2026 WL 2333992, at *2–5; *see also Osman J.M.A.*, 2026 WL 1005056, at *2 ("No person within the United States—including noncitizens who entered unlawfully—shall be 'deprived of life, liberty, or property, without due process of law.'" (quoting U.S. Const. amend. V)). Like Judge Wright, this Court concludes that Mr. H.A.'s OREC entitles him to more process than someone living in the country who has never been encountered by immigration authorities. But even if that were not true, the Court would still Order an individualized custody determination as Judge Wright recommends because the due process clause requires it. *Ovidio D.*, 2026 WL 2333992, at *2–7; *Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656 (D. Minn. July 2, 2026).

For these reasons, the Court overrules Respondents' objections to the R&R.

***Petitioner's Objections***

Two of Mr. H.A.'s objections similarly require specific discussion. First, the Court agrees with Judge Wright's conclusion that an I-200 administrative warrant must be issued prior to the arrest of someone subject to removal proceedings, but declines to hold that it must necessarily be served on the arrestee at the very moment of arrest. Mr. H.A. points to no statutory or regulatory language that plainly spells out a requirement of simultaneous service. And the cases cited by the Petitioner (Dkt. 12 at 2) do not require a different result.

In most of those cases, no warrant *existed* prior to arrest in those cases, making the timing of service irrelevant to the analysis. Additionally, the Court disagrees with Petitioner's assessment of Judge Provinzino's decision from *Sinan O. v. Noem*, No. 26-cv-386 (LMP/JFD), Doc. No. 14 at 4–5 (D. Minn. Feb. 3, 2026). Petitioner argues that Judge Provinzino got the facts wrong when she found that the warrant there preexisted the Petitioner's arrest – an argument with which this Court disagrees, having reviewed the docket in *Sinan O.* But even if Judge Provinzino was incorrect as to facts in that case, her legal analysis as to the ultimate issue is thorough and persuasive and undermines Petitioner's claim that service is required at the time of the arrest.

Petitioner also invites the Court to conclude that service of the warrant must occur at the moment of arrest because, without such a requirement, officers could later lie about whether a warrant was truly issued ahead of time. The Court declines to read a contemporaneous service requirement into the law for policy reasons. Instead, the Court relies on the ability of a detailed factual record in each habeas case to prove or disprove the existence of a warrant, as it has for hundreds of cases in this District in recent months.

Lastly, the Court considers the second of Mr. H.A.'s objections, namely that an order of release is required instead of an order for an individualized custody determination because immigration judges are not always honoring orders from judges in the District requiring the latter. (Dkt. 12 at 9–13.) Although the Court is aware of cases where Respondents have failed to provide the required hearing, the Court is also aware of cases where the hearings have occurred as ordered, and where individual detainees have been

released on bond. Moreover, should the Respondents fail to hold such a hearing in this case, release will be required.

For these reasons, the Court overrules Petitioner's objections to the R&R.

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Report and Recommendation (Dkt. 11) is **ACCEPTED** as modified.
2. The parties' Objections (Dkt. 12, 13) are **OVERRULED**.
3. Hector H.A.'s Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED IN PART**.
4. Respondents are **ORDERED** to provide Petitioner with an individualized custody hearing in Minnesota **no later than Tuesday, September 7, 2026**:
    a. At the hearing, Respondents may seek Petitioner's continued detention based upon an individualized showing that custody is justified by risk of flight or danger to the community.
    b. Respondents must provide Petitioner's counsel with reasonable advanced notice of the hearing to enable preparation and attendance.
5. If Respondents fail to hold the hearing as required, Petitioner must be released within 24 hours of the missed deadline.
6. If the Immigration Judge refuses to consider the merits of the individualized custody determination because they believe they lack the authority to do so, Petitioner Hector H.A. must be released from custody within 24 hours.
7. Respondents must file a notice on the docket within 48 hours of the bond hearing or of Petitioner Hector H.A's release advising the Court of the outcome.

**Let Judgment be entered accordingly**.

Date: August 26, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge